# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JAMES SNELL d/b/a OUTDOOR EXPRESSIONS**, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | )  CIVIL ACTION NO. 21-0229-CG-M ) |
| **UNITED SPECIALTY INSURANCE COMPANY**, | ) ) ) ) |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion of Defendant, United Specialty Insurance Company ("United Specialty"), for summary judgment (Doc. 15), opposition thereto filed by Plaintiff, James Snell d/b/a/ Outdoor Expressions ("Snell") (Doc. 17), and United Specialty's reply (Doc. 22). For the reasons explained below, the Court finds that United Specialty's motion for summary judgment should be GRANTED.

## FACTS

Plaintiff, James Snell, filed this case seeking insurance coverage from United Specialty Insurance Company ("United Specialty") for a state court lawsuit filed against Snell for physical injuries sustained by a claimant on an in-ground trampoline installed by Snell. (Doc.1-1). Snell asserts claims for breach of contract, bad faith denial of coverage, and declaratory judgment.

An insurance application was submitted on behalf of Snell on January 16,

1

2017, for a commercial general liability policy. (Doc. 15-2, PageID.167-179). The application described Snell's "primary operations" as "Lawn Care Business" and later described his operations as "Landscaping/Lawncare." (PageID.168, 176). The application included numerous questions about the activities Snell's work involved, including whether he does "any recreational or playground equipment construction or erection" for which the "No" box was checked. (PageID.177). According to Snell, when he filled out the application, he "had not performed any landscaping work associated with recreational equipment for more than a year" and he did not expect to do that type of work in 2017. (Doc. 17-1, PageID.506). Prior to 2017, Snell had only installed recreational equipment on two occasions, both times for the same clients who requested the work done at issue in this case. (Doc 17-1, PageID.506).

United Specialty issued a policy covering the period January 16, 2017 to January 16, 2018. (Doc. 15-3, PageID.181-246). The policy states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. ...

(Doc. 15-3, PageID.191). The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (PageID.203). "Property damage" is defined as "Physical injury to tangible property, including all resulting loss of use of that property" and "Loss of use of tangible property that is not physically injured." (PageID.209). The policy contains an endorsement entitled "Limitation of Coverage to Specified Operations,

2

Premises, or Projects" which states:

> 1. The following item **(4)** is added to Section **1**- Coverages, Coverage **A.** Bodily Injury and Property Damage Liability, paragraph **1.,** Insuring Agreement, subparagraph **b.**
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
> **(4)** The "bodily injury" or "property damage" arises from one or more of the operations shown above; and if also scheduled above:
> **(a)** The ownership, maintenance or use of the premises shown above and operations necessary or incidental to those premises; and/or
> (b) The projects shown above.
>
> \* \* \* \*
>
> **Coverage for operations, premises or projects <u>not</u> shown above can only be covered if agreed to, in writing, by us as evidenced by endorsement to this policy.**

(Doc. 15-3, PageID.239) (emphasis in original). The Schedule for the Specified Operations, Premises, or Projects Endorsement listed the following under "Operation(s)": "Insured performs landscaping." (PageID.239). The Schedule was left blank under "Premises" or "Projects(s)." (PageID.239). According to United Specialty, it did not agree to provide coverage under the Policy for operations, premises or projects that were not shown in the Schedule. (Doc. 15-1, PageID.166).

In May 2017, Snell discussed a landscaping project with Jeff Weston and Appleton Weston which included tree pruning and removal, the installation of shrubs and trees, sod, and a sprinkler irrigation system, site work for an in-ground trampoline, and the assembly and installation of the trampoline. (Doc. 17-1, PageID.504). According to Snell, the Westons wanted an in-ground trampoline that would be more aesthetically pleasing and sturdy than an above-ground trampoline. (*Id.* at PageID.505). The Westons ordered a prefabricated trampoline and had it

3

delivered to their home. (*Id.*).  In 2017, Snell installed an in-ground trampoline at the Westons' home in Point Clear, Alabama. (Doc. 15-4, PageID.252).  Snell also installed a wooden structure around the trampoline. (Doc. 15-4, PageID.393-394).  Snell admits that the trampoline is "recreational equipment." (Doc. 15-4, PageID.399).  Before the trampoline could be assembled and installed, considerable site work had to be performed, such as: excavation of a pit, construction of concrete block retainer walls, installation of a wood cap on the retainer walls, installation of a drain and drainage sand, excavation of a trench to install a drainage pipe, installation of the drainage pipe and of a drain pump. (Doc. 17-1, PageID.505).  The retaining walls were to prevent erosion and to prevent collapse and the wood cap was for aesthetics. (*Id.*).  The labor involved to assemble and lower the trampoline into the ground was relatively minor compared to the labor and materials regarding the preparatory site work. (*Id.* at 506).  If Snell had known that USIC would deny coverage for a claim arising from the work, he would have declined to do the assembly and placing of the trampoline into the pit. (*Id.*).

In June 2020, Matthew Burton filed a lawsuit on behalf of his minor child against the Westons alleging that in August 2017, his daughter was invited to play on the trampoline and that she was injured when she fell off the trampoline and struck her face on the wooden board surrounding the trampoline. ((Doc. 15-5). The lawsuit alleges among other things that the trampoline had no padding or netting and that "[t]he conditions around the trampoline were dangerous and inherently dangerous for those who used it." (Doc. 15-5, PageID.405).  In November 2020, Burton amended his complaint to add Snell as a defendant and alleged that Snell

4

"negligently and/or wantonly assembled, constructed and installed the trampoline in the backyard of the Weston's home which created an unreasonably dangerous condition and structure on the property." (Doc. 15-5, PageID.414-415). The amended lawsuit asserts that Snell's negligence and/or wantonness was the proximate cause of the serious injuries suffered by his daughter. (Doc 15-5, PageID.415).

United Specialty received notice of the underlying suit in December 2020. (Doc. 15-7, PageID.418; Doc. 15-8 PageID.422). On January 5, 2021, United Specialty emailed Snell stating that it was reviewing the policy to determine if there is coverage. (Doc. 15-7, PageID.419; Doc. 15-8, PageID.458). The email to Snell also stated:

> Also I note the USIC policy states Outdoor Expressions business is Landscaping/Lawncare. How is Outdoor Expressions involved in this trampoline incident?

(Doc. 15-8, PageID.458). That same day, Snell responded by email that he had "installed this trampoline as part of a landscaping job for a client in 2017." (Doc. 15-8, PageID.459). Also on January 5, 2021, Snell emailed two photos of the installed trampoline and copies of the estimates and invoices for the "Landscape Installation Job." (Doc. 15-8, PageID.460-465). On January 6, 2021, United Specialty notified Snell that it was looking at the claim and the information provided and "whether the installation of the trampoline is something that is covered under the USIC policy..." (Doc. 15-8, PageID.466). On January 11, 2021, United Specialty advised Snell that it had determined that there is no coverage under the policy for this claim. (Doc. 15-8, Page.ID.467). United Specialty sent Snell a letter, dated January

5

13, 2021, stating that "the allegations do not arise from your performance of landscaping." (Doc. 15-8, PageID.468-474). The letter further stated that "[a]ssembly and installation of a Trampoline does not fall into the insured landscaping operations" and that it "declines to provide either a defense or indemnification for this lawsuit." (Doc. 15-8, Page.ID.473-474). Snell's attorney responded with a letter disputing United Specialty's position on coverage and demanding that it rescind its denial of coverage and reimburse Snell for all incurred legal expenses to date and pay for his defense moving forward. (Doc. 15-8, PageID.475-476). On May 25, 2021, United Specialty informed Snell that it "maintains that the Policy does not afford coverage for the claim against Mr. Snell for the reasons provided in [the] January 13, 2021 letter." (Doc. 15-8, PageID.477-478).

## DISCUSSION

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for

6

that party.'" *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson*, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that

7

precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 2011 WL 2533755, *2 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Claims**

Snell asserts claims for breach of the insurance contract, bad faith denial of coverage, and declaratory judgment. The declaratory judgment claim seeks a declaration that United Specialty is obligated to defend and indemnify Snell in the underlying lawsuit. United Specialty's summary judgment motion asserts that it has no duty to defend Snell in the underlying lawsuit and that the insurance policy it issued to Snell does not cover the claims against Snell.

    1. Breach of Contract and Declaratory Judgment

"In Alabama, insurers have the right, absent statutory provisions to the

contrary, to limit their liability and write policies with narrow coverage." *Turner v. U.S. Fidelity and Guar. Co.*, 440 So.2d 1026, 1027 -1028 (Ala. 1983) (citation omitted). Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, *see Colonial Life & Accident Ins. Co. v. Collins*, 280 Ala. 373, 194 So.2d 532, 535 (1967), while the insurer bears the burden of proving the applicability of any policy exclusion. *See U.S. Fidelity & Guar. Co. v. Armstrong*, 479 So.2d 1164, 1168 (Ala.1985). If an insurance policy is ambiguous in its terms, the policy must be construed liberally in favor of the insured, and exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured. *Altiere v. Blue Cross & Blue Shield*, 551 So.2d 290, 292 (Ala. 1989). The court notes that an "insurer's duty to defend is more extensive than its duty to [indemnify]." *Porterfield v. Audubon Indem. Co.*, 856 So.2d 789, 791 (Ala. 2002) (quoting *United States Fid. & Guar. Co. v. Armstrong*, 479 So.2d 1164, 1168 (Ala. 1985)). Generally, an insurer's obligations with respect to providing a defense to its insured in an action brought by a third-party are determined by the allegations contained in the third-party's complaint. *Ladner and Company, Inc. v. Southern Guaranty Ins. Co.*, 347 So.2d 100, 102 (Ala. 1977) (citations omitted). "If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured." *Id.* (citing *Goldberg v. Lumber Mutual Casualty Ins. Co.*, 297 N.Y. 148, 77 N.E.2d 131 (1948)). Thus, if there is any potential for coverage arising out of the allegations, then United Specialty would have at least a duty to defend.

> However, a court is not constrained to consider only the allegations of the underlying complaint, but may additionally look to facts which may be proved by admissible evidence. *Tanner [v. State Farm Fire & Cas. Co.*, 874 So.2d 1058, 1064 (Ala.2003)]; *see also Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So.2d 1006, 1010 (Ala.2005) (in deciding whether the allegations of the complaint show a covered accident or occurrence, "the court is not limited to the bare allegations of the complaint ... but may look to facts which may be proved by admissible evidence") (citations omitted). The test, ultimately, is this: "The insurer owes no duty to defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between insurer and insured prove a covered accident or occurrence." *Tanner*, 874 So.2d at 1065.

*Essex Ins. Co. v. Foley*, 2011 WL 1706214, *3 (S.D. Ala. May 5, 2011). If both covered claims and non-covered claims are pleaded, then the insurer's duty to defend extends at least to those covered claims. *Tanner*, 875 So.2d at 1065.

In the instant case, the third-party lawsuit claims an injury arose from Snell's installation of an in-ground trampoline. Under the policy, the third-party allegations are covered if the alleged "bodily injury" "arises from one or more of the operations." (PageID.239). The policy lists Snell's Specified Operations as: "Insured performs landscaping." (PageID.239). Accordingly, whether the claims are covered depends upon whether the performance of "landscaping" would include Snell's installation of the trampoline.

Where an insurance policy defines certain words or phrases, a court must defer to the definition provided by the policy. *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So.2d 687 (Ala. 2001). However, the policy here does not define "landscaping" or the performance of "landscaping."

> When analyzing an insurance policy, a court gives words used in the policy their common, everyday meaning and interprets them as a

10

> reasonable person in the insured's position would have understood them. *Western World Ins. Co. v. City of Tuscumbia*, 612 So. 2d 1159 (Ala. 1992); *St. Paul Fire & Marine Ins. Co. v. Edge Mem'l Hosp.*, 584 So. 2d 1316 (Ala. 1991). If, under this standard, they are reasonably certain in their meaning, they are not ambiguous as a matter of law and the rule of construction in favor of the insured does not apply. *Bituminous Cas. Corp. v. Harris*, 372 So. 2d 342 (Ala. Civ. App. 1979). Only in cases of genuine ambiguity or inconsistency is it proper to resort to rules of construction. *Canal Ins. Co. v. Old Republic Ins. Co.*, 718 So. 2d 8 (Ala. 1998). A policy is not made ambiguous by the fact that the parties interpret the policy differently or disagree as to the meaning of a written provision in a contract. *Watkins v. United States Fid. & Guar. Co.*, 656 So. 2d 337 (Ala. 1994).

*State Farm Mut. Auto. Ins. Co. v. Brown*, 26 So. 3d 1167, 1169-70 (Ala. 2009) (quoting *B.D.B v. State Farm Mut. Auto. Ins. Co.*, 814 So. 2d 877, 879-80 (Ala. Civ. App. 2001)). "[W]hether a contract is ambiguous or unambiguous is a question of law for a court to decide." *Crook v. Allstate Indem. Co.*, 314 So. 3d 1188, 1193 (Ala. 2020) (quoting *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 308 (Ala. 1999)). "If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy ... by making a new contract for the parties." *Shrader v. Employers Mut. Cas. Co.*, 907 So. 2d 1026, 1034 (Ala. 2005) (quoting *St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Ctr.*, 595 So. 2d 1375, 1377 (Ala. 1992)).

So, the Court must start with the common, everyday meaning of the word "landscaping" or "performance of landscaping" and interpret them as a reasonable person in Snell's position would have understood them to mean. The parties have submitted various dictionary definitions for the meaning of "landscaping." The "dictionary definition" of a word is " 'an assertion of th[e] very meaning that an ordinary person would give a particular word' because it is 'the result of an

11

examination into the interpretation that ordinary people would give the word.' "
*Robinson v. Liberty Mut. Ins. Co.*, 958 F.3d 1137, 1140 (11th Cir. 2020) (quoting *Carpet Installation & Supplies of Glenco v. Alfa Mut. Ins. Co.*, 628 So. 2d 560, 562 (Ala. 1993)). United Specialty submits that the dictionary definition of "landscaping" does not include the installation of a trampoline. United Specialty cites the following sources for the definition of "landscaping":

| to modify or ornament (a natural landscape) by altering the plant cover; to engage in landscape gardening; the development and decorative planning of gardens and grounds | Merriam Webster's Collegiate Dictionary 699 (11th ed. 2004). |
|---|---|
| to beautify (land, property, etc.) by modifying or enhancing the natural scenery; the planning and planting of gardens and grounds, esp. so as to produce picturesque and harmonious effects | The New Lexicon Webster's Dictionary of The English Language 554 (1991 ed). |
| the laying out of esp. extensive grounds to resemble natural scenery | The Concise Oxford Dictionary 665 (8th ed. 1990). |
| to improve the appearance of (an area of land, highway, etc.), as by planting trees, shrubs or grass, or altering the contours of the ground | Dictionary.com, https://www.dictionary.com/browse/landscaping |
| to change the natural features of (a plot of ground) so as to make it more attractive, as by adding lawns, trees, bushes, etc. | Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/landscape |
| the development and decorative planting of gardens and grounds | Webster's Third New International Dictionary 1269 (1976 ed.). |

United Specialty contends that none of these definitions reasonably include the installation of a trampoline. Snell, on the other hand, asserts that the common understanding of "landscaping" includes much more than decorative planting of gardens and grounds as described in the above definitions. As examples, Snell,

12

submits the following definitions (some of which come from the same sources cited by United Specialty):

| Definition | Source |
|---|---|
| 1. to improve the appearance of (an area of land, a highway, etc.), as by planting trees, shrubs, or grass, or altering the contours of the ground; <br> 2. to improve the landscape of. | Dictionary.com <br> https://www.dictionary.com/browse/landscaping |
| the process of making a yard or other piece of land more attractive by altering the existing design, adding ornamental features, and planting trees and shrubs | Oxford Learner's Dictionary <br> https://www.oxfordlearnersdictionaries.com/us/definition/english/landscaping?q=landscaping |
| The process of making a yard or other piece of land more attractive by altering the existing design, adding ornamental features, and planting trees and shrubs. | Lexico (powered by Oxford English Dictionary) www.lexico.com/en/definition/landscaping |
| Landscaping refers to any activity that modifies the visible features of an area of land. | Wikipedia <br> https://en.wikipedia.org/wiki/Landscaping |
| Landscaping means the exterior installation of any combination of living plant material such as trees, shrubs, grass, flowers, and other natural vegetative cover; and, may include structural or decorative features such as walkways, retaining walls, fences, benches, lighting, works of art, reflective pools, and fountains. Landscaping may also include other supportive elements such as irrigation systems, ponds, watercourses, mulch, topsoil, pavers, and decorative rock; and, the preservation, protection, or replacement of existing wetlands, trees, shrubs, and similar living plant material. | Law Insider <br> https://www.lawinsider.com/dictionary/landscaping |

However, even the definitions submitted by Snell do not appear to encompass the installation of a trampoline. The definitions talk of improving the appearance of

13

property by planting trees, shrubs, grass or adding ornamental features. The Law Insider definition goes further to state that landscaping may include other supportive or structural elements and lists as examples: walkways, retaining walls, fences, benches, lighting, works of art, reflective pools, fountains, irrigation systems, ponds, watercourses, mulch, topsoil, pavers, and decorative rock. This broader definition is not from a common everyday source. Moreover, the examples it offers do not include or suggest that recreational equipment would be included in the definition of landscaping. Snell's site preparation for the trampoline did include retaining walls to prevent erosion and a wooden cap on the retaining walls for aesthetics. These elements would arguably fall under one or more of the definitions submitted by Snell. Notably, the wooden cap is presumably what the underlying lawsuit alleges physically caused the injury – the plaintiff's daughter fell off the trampoline and struck her face on the wooden board surrounding the trampoline. According to the lawsuit the conditions around the trampoline – which consisted of the wooden cap – were dangerous. But the wooden cap was allegedly dangerous because there was no padding or netting surrounding the trampoline, not because the wooden cap had been negligently installed or was inherently dangerous by itself. The alleged dangerous condition is only as it relates to the use of the trampoline. Snell installed the retaining walls that were capped with a wooden board for use with the trampoline and it was for that use that the lawsuit alleges the conditions were dangerous. If Snell had installed a wooden deck that was meant only to add aesthetics and was intended for general use (such as to walk or sit upon, rather than to surround a trampoline), the conditions would not have been

14

inherently dangerous because of a lack of padding or netting.

Snell also submits a definition for "landscape architecture" but that term was not used in the policy. Snell argues that since "landscape architecture" includes the design of drainage and retaining walls, then the services of landscape contractors would also include the construction of these items. However, landscape architectural plans may include more than what is commonly understood as landscaping and could involve work by a construction company or other more specialized or technical contractors such as engineers, plumbers, lighting or electric contractors. "[T]here is overlap between the professions of landscape architecture and engineering." *Widner v. State Bd. of Registration for Pro. Engineers & Land Surveyors*, 2005 WL 8165517, at *2 (M.D. Ga. Apr. 11, 2005). As an example, in the case of *Witkin Design Grp., Inc. v. Travelers Prop. Cas. Co. of Am.*, 712 F. App'x 894, 895 (11th Cir. 2017), a "landscape architect" designed and built a road intersection where a fatal accident allegedly occurred. While the landscape architecture design in *Witkin* probably included traditional landscaping, it also entailed the construction of roads, which would not be commonly understood to be included in the everyday meaning of "landscaping." More than "landscaping" was presumably necessary to complete the road project that was designed by the landscape architect.

Snell also cites two cases that state that the construction of retaining walls, as was performed as part of the trampoline installation here, may be considered landscape contractor work. *Rhorer v. Vickers*, 107 Or. App. 178, 180, 810 P.2d 1341, 1342 (1991) ("landscape contractor" includes "any person who engages for compensation in activities ... to ... [p]lan and install fences, decks, walkways and

15

retaining walls..."); *Coronado v. Orona*, 137 Wash. App. 308, 315, 153 P.3d 217, 220 (2007) ("landscaping may involve excavation, installation of walkways and plant beds, and construction of retaining walls"). However, the *Rhorer* case relies on an Oregon regulation which defines "landscape contractor." *Rhorer*, 107 Or. App. at 181. The legal definition of a "landscape contractor" in Oregon does not apply here. The *Coronado* case involves whether the person in question was a contractor that was required to obtain a contractor's license and the Court relied on the definitions of "landscape architect" and "improvement by landscape architecture", which were not used in the policy here. *Coronado*, 137 Wash. App. at 315. The *Coronado* case also stated that "[t]he common meaning of "landscaper" is one who decoratively plans and develops gardens and grounds." *Id.* Thus, this Court does not find these cases support Snell's contention.

To support a broader definition for "landscaping" Snell also cites *Essex Ins. Co. v. Foley*, 2011 WL 1706214, at *6 (S.D. Ala. May 5, 2011). In *Foley*, the policy in question covered liability for "marina" operations at a marina owned by Water's Edge, LLC. *Id.* at *1-2. The underlying lawsuit alleged an employee, Mr. Foley, slipped and fell on a ramp for a restaurant located on the marina property. *Id.* at *1, 6. Merriam-Webster Dictionary defines "marina" as "a dock or basin providing secure moorings for pleasure boats and often offering supply, repair and other facilities." *Id.* at *7. This Court found that the term "marina" "is commonly and usually understood to provide a variety of ancillary, complimentary facilities and services above and beyond the mere moorage of vessels" and more specifically, that the restaurant in question was part of the marina. *Id.* Because the dictionary

16

definition of "marina" included the broad language - "and other facilities," the Court found that "marina" may be commonly understood to include restaurant facilities. *Id.*

> More importantly, remember that the Foleys do not accuse Water's Edge of negligent food service or restaurant operations, per se, but instead claim that Water's Edge negligently erected an unsafe, inadequate ramp to facilitate said restaurant's business. It is no great stretch to say that Water's Edge's covered "marina operations" may include the management, oversight, and coordination of support services for common areas used by ancillary service providers at Water's Edge's marina. As such, if the area where the ramp was built is part of the marina complex, and if Water's Edge constructed the ramp as part of its overall marina maintenance and oversight activities, then Water's Edge's conduct would fall within any reasonable meaning of the term "marina operations."

*Foley*, 2011 WL 1706214, at *7. Here, the definitions submitted by the parties for the word "landscaping" do not include broad language that would include the installation of recreational equipment. The common Webster's, Oxford, and Collins dictionary definitions refer only to the beautification or enhancement of the natural features of an area with plants. Thus, the Court finds Foley does not support Snell's contention.

If there was any doubt whether the term "landscaping" as it was used in the policy included the installation of outdoor recreational equipment, the context of the Policy makes it clear that such work is not covered. " 'Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions.' " *Walsh v. Pac. Indem. Co.*, 2022 WL 875234, at *13 (N.D. Ala. Mar. 23, 2022) (quoting *Jay v.*

17

*United Servs. Auto. Ass'n*, 2021 WL 2492739, at *2-3 (Ala. June 18, 2021)). Pursuant to Alabama statute, "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended or modified by any rider, endorsement or application which is a part of the policy." ALA.CODE § 27-14-17(a).  "[T]he insurance application is to be construed as a part of the policy itself." *Atlanta Cas. Co. v. Russell*, 798 So. 2d 664, 667 (Ala. 2001).  Here, Snell was asked in the application whether his work included "any recreational or playground equipment construction or erection" and Snell answered "No." It is undisputed that the trampoline is "recreational equipment."  If Snell had answered "Yes" to that question or if he had informed United Specialty at some time later that his operations were going to include structural work for recreational equipment and the installation of recreational equipment, then United Specialty could have added that coverage and made any appropriate adjustments to Snell's rate. Because the Policy specifically states that Snell's work does not involve any recreational equipment, the Court finds that the Policy's use of the term "landscaping" clearly does include the installation of recreational equipment. The Court finds that the Policy is not ambiguous, and that United Specialty did not breach the contract because it has no duty to defend Snell or to cover the claims against Snell in the underlying lawsuit. Accordingly, summary judgment is due to be granted in favor of United Specialty as to Snell's breach of contract and declaratory judgment claims.

2. Bad Faith Denial

The Alabama Supreme Court has established that the plaintiff has the

18

burden of proving a prima facie case for the tort of bad faith refusal to pay an insurance claim. *Nat'l Sav. Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1361 (Ala. 1982). For an ordinary bad-faith claim, a plaintiff must prove: "(1) the existence of an insurance contract; (2) an intentional refusal to pay the claim; and (3) the absence of any lawful basis for the refusal and the insurer's knowledge of that fact or the insurer's intentional failure to determine whether there is any lawful basis for its refusal." *Acceptance Insurance Co. v. Brown*, 832 So.2d 1, 16 (Ala. 2001) (citation omitted). "Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the [insurance] claim and, thus, the legitimacy of the denial thereof, the [bad faith] tort claim must fail and should not be submitted to the jury." *Nat. Sav. Life Ins. Co. v. Dutton*, 419 So.2d 1357, 1362 (Ala.1982). To make out a prima facie case of bad faith refusal to pay, the insured must generally show that he is entitled to a directed verdict on the contract claim. *Id.* Here, this Court found above that United Specialty had a lawful basis for denying Snell's claim and that Snell's breach of contract claim fails. Accordingly, Snell's claim for bad faith denial also fails.

## CONCLUSION

For the reasons stated above, the motion of Defendant, United Specialty Insurance Company for summary judgment (Doc. 15), is **GRANTED**.

**DONE** and **ORDERED** this 6th day of July, 2022.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE